UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
THE GEO GROUP, INC.,

                    Plaintiff,

        -against-

COMMUNITY FIRST SERVICES, INC.,
JACK A BROWN, III, AKROYD LAKE,
JOSETTE NELSON-DABO,

                    Defendants.
--------------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-cv-1711 (CBA)

**AMON, Chief United States District Judge**.

## INTRODUCTION

In this action, plaintiff GEO Group brings against defendants Community First Services ("CFS"), Jack Brown, Akroyd Lake, and Josette Nelson-Dabo sixteen state law claims arising from GEO and CFS's competition for a government contract. GEO alleges that Jack Brown, while employed by GEO, founded CFS and used confidential and proprietary GEO information to develop a bid for CFS that undercut GEO's bid. Before the Court are CFS, Brown, and Nelson-Dabo's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Stay. For the reasons stated below, defendants' 12(b)(6) motion is granted in part and denied in part and defendants' motion to stay is denied.

## BACKGROUND

*A. Facts Alleged in GEO's Complaint*

This dispute arises from a competition for a government contract. GEO is a Florida Corporation that provides private correctional, detention, reentry, and behavioral services. Compl. ¶ 7.

GEO competes with other providers of these services for government contracts. Compl. ¶¶ 1-3. One such contract was with the United States Bureau of Prisons (the "BOP") for operation of a Residential Reentry Center in Brooklyn, NY. GEO acquired this contract when it acquired the original services-provider, Correctional Services Corporation ("CSC"), in November of 2005. Compl. ¶ 15.

Jack Brown and Josette Nelson-Dabo were employees of GEO.[1] Compl. ¶¶ 9-11. They began work there in November 2005 when GEO acquired CSC, for which both worked at the time. Compl. ¶¶ 9, 11, 15. At GEO, Brown was Vice President of Community Corrections until he resigned on March 13, 2009. Compl. ¶ 9. Nelson-Dabo was Assistant Facility Administrator at the Brooklyn reentry facility until she left GEO for other employment on March 21, 2008. Compl. ¶ 11. A few years after starting at GEO, Brown and Nelson-Dabo both executed certificates acknowledging receipt and understanding of GEO's Code of Ethics. The Code addressed, among other things, conflicts of interest, diversion of corporate opportunities, and confidentiality. Compl. ¶¶ 26-31.

According to the complaint, Brown was unhappy at GEO, and in March 2005, he founded a not-for-profit organization called Community First Services ("CFS"). Compl. ¶¶ 21-22. GEO believes that Brown intended for CFS to compete with GEO for government contracts. *Id.* GEO alleges that Brown has worked as President and CEO of CFS from its inception up to the present, Compl. ¶ 9, and that Nelson-Dabo was Vice President of CFS from its inception until at least August 2009, Compl. ¶ 11.

In November 2008, the BOP issued a "Sources Sought Notice" for the provision of reentry services in Brooklyn, NY. Compl. ¶ 32. GEO hoped to continue to operate the Brooklyn reentry facility, so it began to prepare a response to the Sources Sought Notice. Compl. ¶ 33. Brown as-

---

[1] The complaint also names a third individual defendant, Akroyd Lake. Lake is not party to these motions.

sisted in preparing this response. *Id.* Soon after, the BOP issued a "Pre-Solicitation Notice," but then issued an alteration to that notice, expanding the potential geographical range for the services. Compl. ¶ 36. This apparently led GEO to suspect that they had a competitor for the contract. Compl. ¶ 37. GEO alleges that although they did not know it at the time, CFS was that competitor. Compl. ¶ 86. GEO further alleges that supervisors asked Brown on three occasions who the competitor for the bid might be and that Brown did not disclose CFS's involvement. Compl. ¶ 37-38.

The BOP issued a "request for proposal" on the Brooklyn facility contract on or around January 16, 2009. Compl. ¶ 39. GEO claims that Brown was deeply involved in GEO's preparation of the bid on this request. As a result, Brown was privy to various documents, including the Brooklyn facility's staffing plan, staffing and scheduling plans for a similar facility in The Bronx, NY, and GEO's draft pricing proposal, which Brown helped develop and review. Compl. ¶¶ 41-49. Brown also allegedly forwarded internal group emails regarding the bid to his and his wife's personal email accounts. Compl. ¶ 50.

On March 13, 2009, Brown met with George Zoley, the CEO of GEO, and requested that Zoley make him a partner in the Brooklyn Facility. Compl. ¶ 52. Zoley declined and then asked Brown whether he was aware of any other bidders for the Brooklyn facility contract. *Id.* Brown responded "no." *Id.* He resigned from GEO that day, five days before the bid was due. Compl. ¶ 53.

The BOP awarded the contract to CFS on February 16, 2011. Compl. ¶ 56. CFS and GEO were the only bidders on the contract. Compl. ¶ 57. GEO alleges that CFS was preparing its competing bid while Brown was still working at GEO. Compl. ¶¶ 84-90. It further alleges that

Brown stole confidential information—for example, the contract pricing proposal, staffing plans, and total per diem rates—and used it to prepare a bid that undercut GEO's. Compl. ¶¶ 61-67.

Based on these allegations, GEO filed a protest with the BOP claiming violation of the Procurement Integrity Act, 41 U.S.C. § 423. Compl. ¶ 59. The BOP denied GEO's protest. *See* Decl. of M. Bryant, exhs. 2-3. According to a counterclaim complaint recently filed by Brown and CFS, GEO's appeal of the BOP's decision to the Government Accountability Office was also denied. D.E. # 49, ¶¶ 85-115. Also according to the counterclaim complaint, GEO filed suit in the United States Court of Federal Claims, but withdrew that suit before it was decided.

GEO filed this action, which appears to be the only currently pending legal action concerning this dispute, on April 7, 2011. Relevant to this Memorandum are GEO's claims for (1) unfair competition against CFS and Brown; (2) misappropriation of confidential information against CFS and Brown; (3) misappropriation of trade secrets against CFS and Brown; (4) breach of fiduciary duty against Brown and Nelson-Dabo; (5) fraud against CFS and Brown; (6) negligent misrepresentation against CFS and Brown; (7) diversion of corporate opportunities against Brown; (8) interference with prospective contract against CFS and Brown; (9) breach of contract against Brown and Nelson-Dabo; (10) conversion against CFS and Brown; (11) unjust enrichment against CFS and Brown; (12) civil conspiracy against CFS, Brown, and Nelson-Dabo; (13) aiding and abetting breach of fiduciary duty against Nelson-Dabo; (14) aiding and abetting fraud against Nelson-Dabo; (15) aiding and abetting negligent representation against Nelson-Dabo; and (16) aiding and abetting conversion against Nelson-Dabo.

**DISCUSSION**

*I.    Rule 12(b)(6) Motion*

Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against them.  GEO's complaint contains sixteen claims.  As defendants point out, each of these claims is supported by one or two basic allegations. Mot. at 1.  First is GEO's claim that Brown and CFS misappropriated confidential information and used it to develop CFS's lower bid.  Second is GEO's claim that Brown and Nelson-Dabo secretly worked for both GEO and CFS at a time when CFS was competing with GEO.

The thrust of defendants' motion is to challenge these two allegations as implausible and unfounded.  For the most part, defendants do not argue that even if these two principal allegations are sufficiently plausible, they nonetheless fail to state a claim for relief.  They do not separately analyze the elements of each claim in an attempt to show why that cause of action does not entitle GEO to relief.  Accordingly, this Memorandum and Order rules only on those grounds for dismissal advanced by defendants.

*A.  Standard of Review*

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  In reviewing a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000).

In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In *Iqbal*, the Supreme Court suggested a two-pronged approach to applying Rule 12(b)(6). First, the court is to "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Second, having identified the "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S. Ct. at 1949.

### B. Claims Against CFS and Brown

### i.      Unfair Competition and Misappropriation of Confidential Information/Trade Secrets

GEO's first, second, and third claims are for unfair competition, misappropriation of confidential information, and misappropriation of trade secrets. As other courts have noted, the torts of misappropriation of confidential information and trade secrets are simply species of the "adaptable and capacious" tort of unfair competition. *See Roy Export Co. v. CBS*, 672 F.2d 1095, 1105 (2d Cir. 1982); *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (describing trade secret protection as a "branch of unfair competition law"); *Rochester Linoleum v. Cassin*, 878 N.Y.S.2d 219, 222 (3d Dep't 2009) (noting that an unfair competition claim "may rest on the misappropriation of confidential information"). GEO relies upon the same factual allegations for all three claims, and defendants rely upon the same arguments for dismissal. The Court therefore considers the claims together.

To state a claim for unfair competition under New York law, a plaintiff "must allege 'that the defendant misappropriated the plaintiffs' labors, skills, expenditures, or good will and displayed some element of bad faith in doing so.'" *Banxcorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d

596, 617 (S.D.N.Y. 2010) (quoting *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 833 N.Y.S.2d 138, 140 (2d Dep't 2007)). As to the misappropriation torts, a plaintiff states a claim where it alleges that it possessed some confidential information or trade secret and that, through improper means, the defendant took and used that material. *See 2470 Cadillac Res., Inc. v. DHL Exp. (USC), Inc.*, 923 N.Y.S.2d 530 (1st Dep't 2011); *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990). These torts are applicable where defendants have bene-fited from the wrongful appropriation of a plaintiff's internal documents or business strategies. *See, e.g.*, *Robotic Vision Sys., Inc. v. Gen. Scanning, Inc.*, 1997 WL 1068696, at \*6 (E.D.N.Y. 1997) (recognizing unfair competition claim where plaintiff alleged that it invested "labor, skill and money" to develop a bidding strategy and that defendant appropriated the information under-lying that strategy); *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 303 (S.D.N.Y. 2010); *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 503 (E.D.N.Y. 2009).

GEO alleges that it devoted substantial resources to developing a bid for the Brooklyn facili-ty contract. It claims that it assembled a team, analyzed staffing plans and schedules for its Brooklyn and Bronx facilities, and developed and reviewed a pricing plan for the new contract. Compl. ¶ 32-52. It asserts that it kept this work product confidential. Compl. ¶ 51. And it alleg-es that Brown stole this information and used it to make targeted, strategic reductions for CFS's bid.

CFS and Brown attack this theory in three ways. First, they argue that the information Brown allegedly stole is not confidential or proprietary. Mot. at 17. They attach several exhib-its—including a letter from BOP to the GAO explaining its rejection of GEO's appeal, Byrant Decl., exh. 3, and a chart from the BOP website—which purportedly establish the public availa-

7

bility of much of the information GEO claims was stolen. It is generally true, of course, that if all of the information was publicly available or if GEO did not take steps to keep it secret, GEO would not be entitled to relief. *See Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993). And although the confidentiality of information is generally a question of fact not appropriate for resolution in the Rule 12(b)(6) context, *id.*, a court may take judicial notice of a movant's exhibits "for the purpose of establishing that the information in the various documents was publicly available." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 416 (2d Cir. 2008).

Nevertheless, CFS and Brown's argument fails. To begin with, the Court knows of no authority allowing it to take judicial notice of the truth of facts asserted in the BOP's letter explaining its decision on GEO's appeal to the Government Accountability Office.[2] Nor have CFS and Brown provided authority suggesting that BOP's findings as stated in its opinion are entitled to preclusive effect here. Whether BOP found, based on the evidence before it, that GEO's per diem rates or staffing plans were publicly available is not dispositive of this motion.

More importantly, CFS and Brown do not argue that the actual bid pricing proposal Brown allegedly stole was publicly available. Mot. at 17. It is well-settled that although "matters of public knowledge or of general knowledge in an industry cannot be categorized as trade secrets, a compilation of the public information which incorporates the information in a unique way is, nonetheless, protectable as a trade secret." *See Integ. Cash Mgmt. Servs., Inc. v. Digital Trans., Inc.*, 920 F.2d 171, 174 (2d Cir. 1990). Accordingly, even if some of the information contained in the bid proposal constituted general or public knowledge, the bid proposal itself is protectable as a trade secret.

---

[2] In this regard, CFS and Brown appear to ask the Court to infer from additional facts—for instance, "GEO changed its pricing twice after its bid submission" and "CFS was proposing to use a different site than that used by GEO" Mot. at 22—that the pricing proposal was so useless that no one would want to steal it. Reply at 21. These contentions are outside of the complaint and no principle of judicial notice would allow the Court to assume their truth.

CFS and Brown contend that even if this is so, GEO has not sufficiently pled that it kept the bid proposal information confidential. This is incorrect. GEO specifically claims that it did not make this information publicly available and that it "restrict[ed] dissemination of its proposal preparation materials and information among its own employees, limiting disclosure to key personnel." Compl. ¶ 51. There is simply nothing speculative, implausible, or conclusory about a bidder's claim that it kept its pricing information private by restricting dissemination to a select internal group.

Second, CFS and Brown argue that GEO's allegation that CFS used the information to undercut GEO's bid is mere speculation. Mot. at 25. They argue that GEO's claim amounts to the conclusory allegation that Brown and CFS "must have" used its bid information, relying principally on a recent case from the Southern District of New York, *Joester Loria Group v. Licensing Company Ltd.*, 2011 WL 1642736 (S.D.N.Y. 2011). In that case, plaintiff Joester was a licensing agent for Chrysler and defendant TLC was its subagent. *Id.* at *1. Joester claimed that TLC was given confidential and proprietary information about certain Joester marketing strategies and that TLC used that information to bid on a later contract with Chrysler. *Id.* This allegation was apparently supported only by the contention that defendant necessarily "had to use [plaintiff's] proprietary and confidential information." *Id.* at *3. Calling this contention "mere speculation," "guesswork," and no more likely than "an alternative, lawful explanation of events," the court dismissed under Rule 12(b)(6). *Id.*

The facts provided by GEO rise above "mere speculation" and "guesswork." As GEO points out, it "affirmatively alleged that Brown had access to GEO Group's confidential and proprietary trade secret information . . . [and] used this information to prepare CFS's competing proposal."[3]

---

[3] Again, defendants invite the Court to look outside of the complaint at facts that purportedly establish the speculative nature of GEO's claim. They argue that the Court should look to declarations filed as part of GEO's BOP bid protest, including one by

Resp. at 20; *see* Compl. 44, 51, 64, 69.  Unlike in *Joester*, in which several months elapsed be-

fore the defendant submitted a competing bid, *Joester*, 2011 WL 1642736 at *1-2, CFS submit-

ted its bid less than two weeks after Brown assisted in a line-by-line review of GEO's pricing

proposal, and a few days after Brown's request that GEO make him a partner was denied, precip-

itating his prompt resignation.  This was after Brown allegedly kept the very existence of CFS a

secret, despite opportunities to disclose it.  And contrary to CFS and Brown's contentions, Mot.

at 1 n.1, 17, 18, 19, 29, it is not fatal to GEO's complaint that it has made some of its allegations

upon information and belief.  The Second Circuit has expressly held that information and belief

pleading is permissible for facts "peculiarly within the possession and control" of the defendant.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 121 (2d Cir. 2010).

CFS and Brown's third contention was advanced primarily at oral argument.  There they at-

tacked both the confidentiality of the allegedly stolen information and its potential utility to

Brown and CFS by arguing that Brown already knew all of the information from his experience

running the Brooklyn facility.  They rely on the declaration of GEO employee Angela Meister,

submitted as part of the BOP protest process, in which she stated that she gave Brown the "pric-

ing proposal spreadsheets so that he could confirm the validity of, and provide input regarding,

the actual and proposed costs and expenses." Decl. of Bryant, exh 2D.

This argument fails for two reasons.  First, even if this Court could assume the truth of a

statement made in a declaration submitted as part of an agency protest, Meister's statement is

ambiguous at best.  On a 12(b)(6) motion, such ambiguities must be resolved in favor of the non-

---

GEO officer Ron Maddux that contends that CFS "must have" used GEO information. Reply at 8. Defendants would have the Court replace the allegations GEO actually makes in its complaint with the allegations made as part of the BOP protest, and then find these substituted allegations to be speculative and conclusory. Defendants have provided the Court with no authority to support the proposition that the Court can take judicial notice of all findings in the BOP protest. The expressly limited holding in *5-Star Management, Inc. v. Rogers*, 940 F. Supp. 512 (E.D.N.Y. 1996), cited by defendants, is not to the contrary.

Similarly, facts offered by defendants that purportedly providing an innocent explanation for CFS's bid—for instance, that CFS hired Carol Kichen, who wrote proposals for CSC and whose unique expertise is the real reason CFS could develop and submit a bid in the four days following Brown's resignation, *see* Mot. at 18—are outside of the complaint.

movant, here GEO. Second, although "no restrictions should fetter an employee's right to apply to his own best advantage the skills and knowledge acquired by the overall experience of his previous employment . . . includ[ing] those techniques which are but 'skillful variations of the general processes known to the particular trade,'" *Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 307 (1976) (quoting Restatement (2d) of Agency § 396), GEO alleges that Brown has done more. It does not allege that Brown merely developed a competing bid with generalized knowledge gained as supervisor of the Brooklyn facility; it alleges that he developed a winning bid by appropriating GEO's intended bid—a particularized fact about a pending government contract—and undercutting it.

When the above facts and others stated in the complaint are taken together and all reasonable inferences are drawn in favor of GEO, the complaint provides "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]," *Twombly*, 550 U.S. at 556. CFS and Brown's motion to dismiss the first three claims is denied.

*ii.* *Breach of Fiduciary Duty*

GEO's fourth claim is for breach of fiduciary duty. To state a claim for breach of fiduciary duty, a plaintiff must allege "the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (App. Div. 2007).

GEO alleges that Brown breached his duty as an officer of GEO by owning and operating CFS, failing to disclose its existence, failing to disclose that CFS was preparing a competing bid, breaching GEO's Code of Ethics, using company time to run CFS, and using GEO's confidential information. Compl. ¶ 86. As with the above claims, Brown argues that GEO's factual allega-

tions amount to the conclusory claim that CFS must have been competing with GEO while Brown worked there. And as above, the Court finds this argument without merit.

Brown argues that "merely taking steps not involving any dereliction of positive duties to a current employer in preparation for engaging in competition with that employer after leaving its employ may not involve any breach of fiduciary duty." *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 906 (2d Cir. 1998). But GEO claims that Brown did far more than merely incorporate CFS to compete later. It alleges that Brown used his access to confidential GEO information and resources for the benefit of his own private interest in CFS. It further alleges that despite numerous opportunities, Brown failed to disclose this private interest. These factual allegations, coupled with the timing of Brown's departure and CFS's bid, give rise to an inference that Brown was operating CFS as a competing business while employed by GEO. If true, this behavior constitutes a breach of fiduciary duty. *See, e.g.*, *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 14 N.Y.3d 774, 776 (2010); *Coastal Sheet Metal Corp. v. Vasallo*, 904 N.Y.S.2d 62, 64 (1st Dep't 2010).

Brown's motion to dismiss GEO's fourth claim is denied.

### iii.    *Breach of Contract, Fraud, and Negligent Misrepresentation*

GEO's ninth, fifth, and sixth and claims are for breach of contract, fraud, and negligent misrepresentation. Because Brown argues that the breach of contract claim forecloses the fraud and negligent misrepresentation claims, it is appropriate to consider all three together.

As to the breach of contract claim, GEO alleges that Brown "acknowledged in writing" that he "had received, read, and understood 'The GEO Group, Inc. Code of Ethics of Business Conduct and Ethics.'" Compl. ¶¶ 128, 130. In its complaint, GEO quotes Section 2 of the Code, which prohibits conflicts of interest, Compl. ¶ 29; Section 3 of the Code, which prohibits theft of

corporate opportunities, Compl. ¶ 30; and Section 9 of the Code, which prohibits disclosure of confidential information, Compl. ¶ 31. GEO alleges that Brown breached all three of these provisions by appropriating and using confidential bid information and by competing with GEO on the bid.

Brown argues that the breach of contract claim should be dismissed for the same reasons as the unfair competition and breach of fiduciary duty claims, namely that the factual allegations underpinning those claims are speculative and implausible. For the same reasons discussed above, this argument is without merit. And because Brown has advanced no other argument attacking the validity or enforceability of the Code of Conduct, the motion to dismiss the breach of contract claim is denied.

As noted above, however, Brown also argues that any breach of contract claim forecloses claims for fraud and negligent misrepresentation arising out of the same conduct. For its fraud and negligent misrepresentation claims, GEO alleges that Brown "purposefully and repeatedly failed to truthfully disclose" that he worked for CFS and that CFS was preparing a competing bid. Compl. ¶¶ 92-96. This induced GEO's continued trust, which preserved Brown's access to GEO's confidential and proprietary information. Brown then allegedly used this information to further the interests of CFS, to the detriment of GEO. *Id.* Brown argues that this is simply GEO's breach of contract claim dressed up in the language of tort.

It is well settled that "[a] cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract . . . ." *MTA v. Triumph Adver. Prods., Inc.*, 497 N.Y.S.2d 673, 675 (App. Div. 1986). "To maintain a claim of fraud in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek

special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Similarly, with respect to negligent misrepresentation, "[i]f the duty between the parties arose out of a contract, such that the contract required a correct representation, then any misrepresentation must be pled as a breach of contract, not as a tort claim for negligent misrepresentation." *Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009). In such circumstances, a plaintiff must demonstrate "a legal duty independent of the contract . . . . [which] must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987).

An officers and employee generally owes his employer a fiduciary duty of loyalty and good faith. *Laro Maintenance Corp. v. Culkin*, 700 N.Y.S.2d 490 (2d Dep't 1999); *Lamdin v. Broadway Surface Advertising Corp.*, 272 N.Y. 133 (1936). Brown has not argued that he did not owe GEO a fiduciary duty, and the existence of such an independent duty permits a plaintiff to sustain claims sounding in both contract and tort arising out of the same conduct. *See Bullmore v. Banc of America Securities LLC*, 484 F. Supp. 464, 469-70 (S.D.N.Y. 2007) ("Conduct constituting a breach of contract nevertheless is actionable in tort if 'a legal duty independent of the contract itself has been violated.'"); *see also Shpak v Curtis*, 2011 WL 4460605 (E.D.N.Y. 2011); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007); *Carmania Corp. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938-39 & n.2 (S.D.N.Y. 1989).

The Court reiterates in this regard that Brown has not contested that he owed a fiduciary duty to GEO, nor, perhaps more importantly, has he argued that GEO's breach of fiduciary duty

claim, in addition to the fraud and misrepresentation claims, must be dismissed as duplicative of its breach of contract claim, *see, e.g.*, *William Kaufman Org. v. Graham & James LLP*, 703 N.Y.S.2d 439 (1st Dep't. 2000); *Brooks v. Key Trust Co. Nat. Ass'n*, 809 N.Y.S.2d 270 (3d Dep't 2006). Moreover, "it would be . . . inappropriate to dismiss [a] claim founded on fiduciary duty at this point in the litigation, when the exact duties of the parties under the contract have not yet been determined, and thus it may well be that a fiduciary duty arising from the parties alleged relationship . . . would be separate from and independent of the duties under the contract." *Indep. Asset Mgmt. LLC v. Zanger*, 538 F. Supp. 2d 704, 710 n.4 (S.D.N.Y. 2008). Because the Court has concerns about the nature of the contract formed by the Code of Conduct, it is reluctant to conclude at this stage in the litigation that said contract precludes causes of action for fraud and negligent misrepresentation.

Brown has offered no additional ground for dismissal of the fraud, negligent misrepresentation, or breach of contract claims. Accordingly, his motion to dismiss them is denied.

*iv.    Conversion*

GEO's tenth claim is for conversion arising from CFS and Brown's alleged taking of its proprietary work product. "To establish a cause of action to recover damages for conversion, the plaintiff must show legal ownership or an immediate superior right to possession of a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights." *Eight in One Pet Prods. v. Janco Press, Inc.*, 828 N.Y.S.2d 899, 899 (2d Dep't 2007). In support of its claim, GEO cites *Thyroff v. Nationwide Mutual Insurance Co.*, 8 N.Y.3d 283, 290-93 (2007), a New York Court of Appeals decision that held that the tort of conversion applies to intangible property contained in electronic files or records. Brown and CFS argue that, notwithstanding this expansion of the

15

conversion tort, GEO cannot state a claim "under New York law unless GEO was excluded from using its own property." Mot. at 28.  Because GEO was able to use its information notwithstanding Brown's alleged misappropriation, Brown and CFS argue, a conversion claim does not lie.

The Court does not read *Thyroff* to alter the traditional rule requiring "the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor," *Harper & Row, Publishers, Inc. v. Nation Enterp*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*; *accord FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303 (7th Cir. 1990) (*citing Harper & Row*, 723 F.2d 195) (holding under California law that "possession of copies of documents—as opposed to the documents themselves—does not amount to an interference with the owner's property sufficient to constitute conversion.").  Indeed, *Thyroff* itself had no need to confront this issue because the plaintiff in that case *was* fully deprived of access to information stored on a computer hard drive.  *Thyroff* simply eliminated the law's arbitrary distinction between the theft of information stored on a computer and the theft of information printed on paper.  In other words, it expanded the scope of property subject to conversion, not the wrongful conduct necessary to convert it.

GEO at all times had access to its own information.  Because it cannot allege that Brown and CFS excluded GEO from possession or use of the information—at least not in any but the most abstract sense—GEO cannot state a claim for conversion.  The motion to dismiss the conversion claim is granted as to all defendants.

v.      *Remaining Claims Against Brown and CFS*

GEO's remaining claims against Brown and CFS are for diversion of corporate opportunities against Brown (claim seven, Compl. ¶¶ 109-17); interference with prospective contract against CFS and Brown (claim eight, Compl. ¶¶ 118-26); unjust enrichment against CFS and Brown

16

(claim eleven, Compl. ¶¶ 141-46); and civil conspiracy against all individual defendants (claim twelve, Compl. ¶¶ 147-53). Brown and CFS do not mention any of these claims by name, ostensibly relying on their other arguments to support dismissal. Because the Court has already rejected these arguments, and because Brown and CFS have not supplied other grounds for dismissal, the motion is denied.

### C. Claims Against Nelson-Dabo

#### i.     Breach of Fiduciary Duty

GEO contends that Nelson-Dabo breached her fidiuciary duty as a GEO employee by working for CFS, failing to disclose that she worked for CFS, and failing to abide by the GEO Code of Ethics. The only specific instance of CFS's competition with GEO is the Brooklyn facility contract. The "Sources Sought Notice" for that contract was issued on November 7, 2008. Compl. ¶ 32. Nelson-Dabo stopped working for GEO on March 21, 2008, over seven months before BOP issued the Sources Sought Notice. Compl. ¶ 11. Based on the dates in the complaint, Nelson-Dabo could not possibly have worked for both GEO and CFS while this competition was occurring. GEO also does not allege that Nelson-Dabo herself had access to, used, or disclosed any confidential or proprietary GEO information. Absent such conduct, a former employee is not barred from competing with her former employer. *Anacomp, Inc. v. Shell Knob Servs., Inc.*, 1994 WL 9681, at *14 (S.D.N.Y. 1994); *Pearlgreen Corp. v. Yau Chi Chu*, 778 N.Y.S.2d 516, 517 (2d Dep't 2004). GEO's claim for breach of fiduciary duty against Nelson-Dabo is dismissed.

#### ii.    Breach of Contract

GEO also accuses Nelson-Dabo of breach of contract for alleged violation of the Code of Ethics's conflict of interest provision. Compl. ¶ 132. Just as above, however, the dates of Nel-

son-Dabo's resignation and the only CFS competition specifically alleged by GEO's complaint preclude the inference that Nelson-Dabo breached the Code of Ethics. Accordingly, GEO's claim for breach of contract against Nelson-Dabo is dismissed.

### iii. Aiding and Abetting Claims

GEO's other claims against Nelson-Dabo, thirteen through sixteen in the complaint, accuse her of aiding and abetting breach of fiduciary duties, fraud, negligent misrepresentation, and conversion.[4] It is generally true that "actual knowledge is required to impose liability on an aider and abettor under New York law." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006). Moreover, it is axiomatic that to aid and abet an underlying tort the defendant must provide "substantial assistance" to the primary violator. *Id.* (requiring substantial assistance for both aiding and abetting breach of fiduciary duty and aiding and abetting fraud claims); *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.3d 38, 48 (2d Cir. 1978) (discussing generally the elements of aiding and abetting causes of action in analyzing aiding and abetting securities fraud claim).

Nelson-Dabo correctly contends that GEO has not set forth adequate facts under *Twombly* and *Iqbal* to demonstrate actual knowledge. The facts supporting GEO's aiding and abetting claims against Nelson-Dabo are little more than conclusory restatements, often upon information and belief, of the elements of aiding and abetting claims. The complaint does allege that Nelson-Dabo worked at both GEO and CFS at the same time, provide alleged dates of employment, and list alleged positions. It does not, however, allege specific involvement in the Brooklyn facility contract or provide facts giving rise to the inference that Nelson-Dabo was directly involved in

---

[4] The Court is mindful that GEO's aiding and abetting fraud and aiding and abetting negligent misrepresentation claims are governed by Fed. R. Civ. P. 9(b)'s heightened pleading standard. *See Lerner*, 459 F.3d at 292-93; *Welch v. TD Ameritrade Holding Corp.*, 2009 WL 2356131, at \*21 (S.D.N.Y. 2009). Moreover, several courts in this circuit have by now recognized that the heightened pleading requirements of Fed. R. Civ. P. 9(b) may apply "equally to claims alleging aiding and abetting fraud, aiding and abetting breach of fiduciary duty sounding in fraud, and aiding and abetting conversion premised on fraud," *In re Agape Litigation*, 773 F. Supp. 2d 298, 307 (E.D.N.Y. 2011). *See Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996) (applying Rule 9(b) to aiding and abetting breach of fiduciary duty); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (applying Rule 9(b) to conversion). GEO's aiding and abetting claims fail under either standard.

the bid process.  Nor does the complaint explain Nelson-Dabo's professional relationship with Brown or Lake, explain her role at CFS, or otherwise provide a factual basis for the inference that Nelson-Dabo was aware that Brown misappropriated information, competed with GEO, or lied to GEO.

Without any of this, GEO alleges only that Nelson-Dabo worked at both GEO and CFS at the same time, but before any specifically alleged competition, and that other individuals who also worked for both GEO and CFS committed torts.  These facts alone do not raise an inference of actual knowledge or substantial participation "above the speculative level," *Twombly*, 550 U.S. at 555. *See Berman v. Morgan Keegan & Co., Inc.*, 2011 SL 1002683 (S.D.N.Y. 2011).  The aiding and abetting claims against Nelson-Dabo are therefore dismissed.

> ## II. *Motion to Stay*

Initially, defendants moved in the alternative for "stay or dismissal pursuant to the doctrine of primary jurisdiction pending the resolution of GEO's bid protest." Mot. at 30.  As explained above, there is no longer any other pending legal action arising out of this dispute.  Accordingly, stay or dismissal on this ground is not appropriate.

# CONCLUSION

For the reasons set forth above, the Motion to Dismiss is

GRANTED as to all claims as to Josette Nelson-Dabo;

GRANTED as to claim ten for conversion as to all defendants;

DENIED as to all other claims and defendants.

The Motion to Stay is DENIED.


SO ORDERED.

Dated: Brooklyn, N.Y.
      March 30, 2012


                                /s/

                              Carol Bagley Amon
                              Chief United States District Judge