# MICHAEL BODINE

**Subpoena – Michael Bodine, Contracting Officer, Department of Justice, Bureau of Prisons**

**Attachment A**

**Sample Questions to be asked at deposition**

- How long have you been employed by the Department of Justice ("DOJ"), Federal Bureau of Prisons ("FBOP") as a contracting officer?

- Did you ever work as a contracting officer for any other federal or state government agency?

- If so, where and for how long at each place?

- What specific roles does a contracting officer play in the government acquisition process?

- When did you first become involved in the FBOP's Request for Proposal ("RFP") 200-1042-NE for a contract to operate a residential reentry center in Brooklyn, New York?

- Had you been involved with any of the previous contracts awarded by the FBOP to operate a residential reentry center within the five Boroughs of New York?

- If so, what prior RFPs/contracts had you been involved with?

- What was your role in these particular RFPs/contracts?

- When did you receive The GEO Group, Inc.'s ("GEO Group") bid proposal submitted in response to RFP 200-1042-NE to operate a residential reentry center in Brooklyn?

- When did you receive Community First Services, Inc.'s ("CFS") bid proposal submitted in response to RFP 200-1042-NE to operate a residential reentry center in Brooklyn?

- Did GEO Group include any allegations regarding former employee Jack Brown, who is the president of CFS, with GEO Group's bid submission?

- What were the nature of GEO Group's allegations?

- Did you speak with anyone at GEO?

- If so, who?

- If you spoke to anyone at GEO, what did they tell you?

- What documents did you receive from GEO?

949199.1                                    1

- Did you review the proposals submitted by GEO Group and CFS and come to any conclusions or thoughts regarding GEO Group's allegations regarding Jack Brown and CFS's bid proposal?

- What were those conclusions or thoughts?

- Did you consult with anyone else at the FBOP as to your conclusions or thoughts?

- Who else at the FBOP did you speak with regarding your thoughts or conclusions as to GEO Group's allegations?

- What did they conclude?

- Was a decision made to put the procurement process on hold and investigate any potential wrong doing on the part of CFS and/or Jack Brown as to CFS's bid proposal submitted in response to RFP 200-1042-NE?

- Was the Department of Justice-Office of the Inspector General ("DOJ-OIG") assigned to that investigation of CFS's bid proposal submitted in response to FBOP RFP 200-1042-NE?

- Was a DOJ-OIG Special Agent ("SA") Andrew Hartwell assigned to that investigation?

- Who else was assigned to that investigation?

- What government departments were they from?

- What, if any, materials did you provide to the assigned investigators?

- Did discuss the matter with the investigators before they started their investigation?

- Around what date did they begin their investigation?

- Did you have any discussions with these investigators during the course of their investigation?

- If so, what was discussed?

- Around what date was the investigation completed?

- Did you discuss the results of the investigation with the investigators prior to the issuance of any written report?

- If so, what did the investigators conclude and find?

- Did you agree with their conclusions and findings?

- When did you receive the investigators' written report?

- Did it match any oral report you might have received from the investigators?

- Did you agree with the written report's conclusions and findings?

- Was a decisions made to move forward with the bid process for FBOP RFP 200-1042-NE and consider the competing bids submitted by GEO Group and CFS?

- Did the FBOP only consider the bids initially submitted by GEO Group and CFS, and that were the focus of the investigation, or did GEO Group and CFS submit revised bids to the FBOP?

- If revised bids were submitted, how many revised bids were submitted by GEO Group and when; and how many revised bids were submitted by CFS and when?

- Did GEO Group revise its proposed pricing from that which it had submitted with their initial bid proposals, which had been the focus of the investigation?

- If so, was GEO Group's final revised proposed pricing higher or lower than its initial proposed pricing?

- Did CFS revise its proposed pricing from that which it had submitted with their initial bid proposals, which had been the focus of the investigation?

- If so, was CFS's revised proposed pricing higher or lower than its initial proposed pricing?

- Who did the FBOP ultimately award the contract to operate a residential reentry center in Brooklyn under RFP 200-1042-NE?

- What major factors did the FBOP base it decision on?

- What weight did you, or the FBOP, give to GEO Group's allegations that Mr. Brown/CFS has taken and used certain GEO Group documents in awarding the contract for RFP 200-1042-NE to CFS?

- Did the FBOP find both GEO Group and CFS equally technically proficient?

- Did anyone from GEO discuss with you whether anyone from GEO Group, or any consultants retained by GEO Group, had performed any type investigation of Jack Brown?

- If so, did GEO reveal to you, share with you, or provide to you any documents or reports as to any investigation of Jack Brown that GEO had performed?

- During the course of the entire bid selection process for FBOP RFP 200-1042-NE, did you ever suspect, or became aware of, any conduct on the part of FBOP contracting personnel, or the personnel from any other involved government agency, that tended to give one bidder an unfair advantage in the bidding process over another?

- Did you review GEO Group's February 28, 2011 bid protest filed with the FBOP?

- Did you discuss GEO Group's February 28, 2011 bid protest filed with FBOP Agency Protest Official James Smith?

- If so, what did you discuss?

- Did you review GEO Group's April 18, 2011 appeal filed with the Government Accountability Office ("GAO") of the April 8, 2011 denial by FBOP Agency Protest Official James Smith of GEO Group's February 28, 2011 bid protest?

- Did you participate in the preparation of the FBOP's May 19, 2011 memorandum of law (the "FBOP May 2011 MOL") submitted to the GAO in opposition to GEO Group's April 18, 2011 appeal filed with the GAO?

- Did you, or the FBOP, consider any of the GEO Group documents or information enumerated and discussed in the FBOP May 2011 MOL that GEO Group alleged Mr. Brown/CFS took and allegedly used in preparing CFS's bid for RFP 200-1042-NE to be confidential information?

- What conclusions did you reach?

- Did you, or the FBOP, consider any of the GEO Group documents or information enumerated and discussed in the FBOP May 2011 MOL that GEO Group alleged Mr. Brown/CFS took and allegedly used in preparing CFS's bid for RFP 200-1042-NE to be proprietary trade secret information?

- What conclusions did you reach?

- Did you, or the FBOP, consider any of the GEO Group documents or information enumerated and discussed in the FBOP May 2011 MOL that GEO Group alleged Mr. Brown/CFS took and allegedly used in preparing CFS's bid for RFP 200-1042-NE to be non-public information?

- What conclusions did you reach?

- Did you, or the FBOP, consider any of the GEO Group documents or information enumerated and discussed in the FBOP May 2011 MOL that GEO Group alleged Mr. Brown/CFS took and allegedly used in preparing CFS's bid for RFP 200-1042-NE to be advantageous to CFS's bid?

- What conclusions did you reach?

- Did you, or the FBOP, consider any of the GEO Group documents or information enumerated and discussed in the FBOP May 2011 MOL that GEO Group alleged Mr. Brown/CFS took and allegedly used in preparing CFS's bid for RFP 200-1042-NE to be prejudicial to GEO Group's bid?

- What conclusions did you reach?

- Did you, or the FBOP, consider any of the GEO Group's allegations as discussed in the FBOP May 2011 MOL that Mr. Brown and/or the Defendants had access to GEO Group's pricing information and used that information in preparing CFS's bid for RFP 200-1042-NE?

- What conclusions did you reach?

## ATTACHMENT B

**Definitions and Instructions**

1. "GEO Group" refers to the GEO Group, Inc. and any and all of its officers, employees or agents.

2. "CFS" refers to Community First Services, Inc.

3. "Brown" refers to Jack A. Brown, III.

4. "Kichen" refers to Carol Kichen.

5. "Meister" refers to GEO Group Business Manager Angela Meister.

6. "Maddux" refers to GEO Group Vice President Ron Maddux.

7. "Bulfin" refers to GEO Group General Counsel Jack Bulfin.

8. "DOJ" refers to the United States Department of Justice.

9. "OIG" refers to the DOJ-Office of the Inspector General.

10. "BOP" refers to the Federal Bureau of Prisons.

11. "GAO" refers to the United States Government Accountability Office.

12. "RRC" refers to Residential Re-entry Center.

13. "RFP" refers to Request For Proposal.

14. "SA" refers to DOJ-OIG Special Agent.

15. "SAIC" refers to DOJ-OIG Special Agent In Charge.

16. "APO" refers to Agency Protest Official.

17. "CO" refers to Contracting Officer.

18. "Bodine" refers to BOP Procuring CO Michael Bodine.

19. "Dufort" refers to BOP Community Corrections Contracting Section Chief Thomas Dufort.

20. "Bland" refers to BOP Procuring CO Robert Bland.

21. "Ely" refers to BOP Procurement Executive Darlene Ely.

22. "Smith" refers to BOP APO James Smith.

949266v1

23. "Hartwell" refers to SA Andrew Hartwell.

24. "Chawaga" refers to SAIC M. Elise Chawaga.

25. "DOJ-OIG" means the recipient of this Subpoena, the Department of Justice, Office of the Inspector General, and any present or former employees, agents, representatives, attorneys, or other Persons acting on behalf of it.

26. "RFP 200-1042-NE" refers to the BOP solicitation to bid on a contract to manage and operate a RRC in Brooklyn or Queens, New York.

27. "Case Number 2009-007103" refers to the OIG investigation relating to the bids submitted in March 2009 by GEO Group and CFS in response to the BOP RFP 200-1042-NE relating to BOP RRC services in the Brooklyn/Queens, New York area.

28. "January 2010 OIG Report" refers to the January 19, 2010 Abbreviated Report Of Investigation for Case Number 2009-007103 for Subject CFS-Brown, President relating to BOP RFP 200-1042-NE, prepared and signed by SA Hartwell and approved by SAIC Chawaga[1], which included accompanying attached exhibits: August 20, 2009 Memorandum of Investigation; August 24, 2009 Memorandum of Investigation; August 27, 2009 Memorandum of Investigation; and the January 12, 2010 Computer Forensic Examination Report.

29. "Communication" means any transmittal of information, whether facts, ideas, inquiries, or otherwise, regardless of form, method or medium.

30. "Document" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure. "Documents" includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer stored, or electronically-stored matter of any kind or nature whatsoever, however produced, in whatever form maintained, and any and all nonidentical (for whatever reason) originals, copies, and prior drafts thereof, within your possession, custody or control, regardless of where located. Electronically stored information ("ESI") includes, but is not limited to, voices mail messages, email and any information stored on computer hard drives, processing cards or tapes, memory banks, floppy disks, storage disks, back-up tapes, CD-ROMS, DVDs, and DATs. In all cases where originals are not available, "document" also means photocopies and other copies of such documents and any portion thereof.

31. "Concerning" or "relating to" means referring to, relating to, concerning, describing, pertaining to, evidencing, constituting, involving, or touching upon in any

---

[1] The January 2010 Report incorrectly identified RFP 200-0912-NE as the BOP solicitation to provide RRC services in the Brooklyn/Queens, New York area, which was the subject of the investigation. RFP 200-0912-NE was a BOP solicitation to provide RRC services in the Bronx, New York that GEO Group had bid on and was awarded on June 29, 2007.

949266v1                                         2

way. Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

32. "Identify" when referring to a person or entity means to give, to the extent known, the full name of the person or entity, and when referring to a natural person, additionally, the present or last known place of employment. When referring to documents, "identify" means to give the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), address(s) and recipient(s).

33. The term "any" shall be construed as "any and all."

34. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses and production of Documents that might otherwise be construed to be outside of its scope.

35. The use of the singular form of any word includes the plural and vice versa, and a verb tense includes all other tenses where the clear meaning is not distorted by the addition of another tense or tenses.

36. Each page produced is to be marked in the lower right corner with an identifying consecutive Document control number. All Documents which are physically attached to each other in the original files shall be left so attached.

37. If any Document requested herein was formerly in the OIG's possession, custody or control and has been lost or destroyed, the OIG shall submit a written statement that: (a) describes in detail the nature of the Document and its content; (b) identifies the person who prepared the Document and its contents; (c) identifies the persons who have seen or had possession of the Document; (d) specifies the dates on which the Document was prepared, Sent or Received; (e) specifies the date on which the Document was lost or destroyed, the conditions of and reasons for such destruction and the persons requesting and performing the destruction; and (f) identifies all persons with knowledge of any portion of the contents of the Document.

38. If any Document or a portion of that Document requested is withheld on grounds of privilege or other legal doctrine, submit with the Documents produced a statement in writing under oath ("Privilege Log") setting forth: (a) the type of Document; (b) the date of the Document; (c) the name, address, and title of the author and the recipient(s) of the Document; (d) the general subject matter of the Document; (e) the Document control number(s); (f) the number of pages in each Document; (g) the name and address of each person to whom a copy of the Document was furnished or to whom the contents thereof were communicated; (h) the relationship of the author, addressee, and other recipients to each other and to You; (i) the legal and factual ground for withholding the Document; and (j) if the legal ground for withholding the Document is attorney-client privilege, also indicate the name of the person to whom the privilege applies and the attorney connected thereto. Such Privilege Log shall accompany each production.

39. The obligation to produce pursuant to this Subpoena is a continuing one. Documents responsive to the Subpoena that are located or created at any time after the Subpoena is served shall be promptly produced at the place specified in the Subpoena.

**Documents and Items Requested**

1. Unredacted copies of the August 20, 2009 Memorandum of Investigation; August 24, 2009 Memorandum of Investigation; August 27, 2009 Memorandum of Investigation; and the January 12, 2010 Computer Forensic Examination Report, which accompanied and were attached as exhibits to the January 19, 2010 Abbreviated Report Of Investigation (the "January 2010 Report") for Case Number 2009-007103 for Subject CFS-Brown, President relating to BOP RFP 200-1042-NE, prepared and signed by SA Hartwell and approved by SAIC Chawaga.

2. Any and all documents or communications concerning or in any way related to RFP 200-1042-NE and/or Case Number 2009-007103.

3. Any and all documents or communications which identify any employee of the BOP who participated in RFP 200-1042-NE and/or Case Number 2009-007103.

4. Any and all documents and items and communications concerning, relating to or referencing RFP 200-1042-NE and/or Case Number 2009-007103 in the possession, custody or control of BOP representatives or employees.

5. Any and all notes taken during any conversations with anyone from GEO Group, CFS, OIG, or anyone else, pertaining RFP 200-1042-NE and/or Case No. 2009-007103 in the possession, custody or control of BOP representatives or employees.

6. Any and all documents and communications concerning, relating to or referencing Bodine, Dufort, Bland, Ely or Smith, as pertains to RFP 200-1042-NE and/or Case Number 2009-007103 in the possession, custody or control of BOP representatives or employees.

7. Any and all notes taken during any conversations with Dufort, Bland, Ely or Smith, as pertains to RFP 200-1042-NE and/or Case No. 2009-007103 in the possession, custody or control of BOP representatives or employees.

8. Any and all documents and items and communications concerning, relating to or referencing SA Hartwell, or any other SA or employee or consultant or contractor of the OIG, as pertains to RFP 200-1042-NE and/or Case Number 2009-007103 in the possession, custody or control of BOP representatives or employees.

9. Any and all notes taken during any conversations with SA Hartwell, or any other SA or employee or consultant or contractor of the OIG, as pertains to RFP 200-1042-NE and/or Case No. 2009-007103 in the possession, custody or control of BOP representatives or employees.

949266v1                                4